LittletoN, Judge,
delivered the opinion of the court:
Plaintiff, a World War I veteran with a service-connected disability, sues to recover $5,071.20, representing salary of which he alleges he was illegally deprived for the period November 18, 1946, to August 25, 1948, on the ground that certain rights and privileges accorded him as a veteran by Section 14 of the Veterans’ Preference Act of 1944, 58 Stat. 387, 390; 5 U. S. C. (1946 Ed.) § 863, were violated.
Plaintiff was employed in a position designated as a Storekeeper, CAF-5, at MacDill Field, Tampa, Florida. In October of 1946 a position classification survey of certain positions at the field was made by the proper officer of defendant, which proposed a reclassification of the position held by plaintiff from Storekeeper, CAF-5, to Senior Warehouseman, Grade 9. Plaintiff was informed of the proposed action on or about November 1, 1946. At the same time, an Army enlisted man was assigned to supervisory duties at the commissary where plaintiff worked. Findings 3 and 4.
On November 12, 1946, an unsigned document was presented to plaintiff and he was requested to indicate, by appropriate markings, whether he would accept a reduction in grade from Storekeeper, CAF-5, $2,895.60 per annum, to Senior Warehouseman, Grade 9, $1.10 per hour, effective December 15, 1946, “in lieu of reclassification.” Plaintiff *575 signed the document indicating that he would not accept a reduction. This document was the form in regular use at this time at MacDill Field for notifying civilian employees of the Department of the Army of proposed reductions in grade. It was the only written notice given to plaintiff more than thirty days prior to December 15, 1946, the specified effective date of the proposed action, and was intended at the time to serve as the required advance notice to plaintiff as a veteran. Finding 5.
A few days prior to November 18, 1946, the enlisted man who had been assigned to the commissary where plaintiff had worked had ordered plaintiff to help unload boxcars. Plaintiff refused to do so, believing that he was physically unable to perform such arduous work. He did not report for work on November 18, and was listed as absent- without leave. On November 19, 1946, plaintiff conferred with the Assistant Personnel Officer at MacDill Field and with the man, then at MacDill Field on temporary assignment, who became Civilian Personnel Director at the field a few days later. Finding 7. Plaintiff discussed his situation and reclassification of the position with the officers, including his understanding that the position of Senior Warehouseman would require physical labor which plaintiff felt that he could not, because of his health, perform. Following the conference plaintiff applied for and was duly granted thirty days’ annual leave.
On December 12, 1946, the Civilian Personnel Director signed a report of personnel action directed to plaintiff (finding 8), notifying him that effective December 15, 1946, he would be reduced from Storekeeper, CAF-5, to Senior Warehouseman, Grade 9. Plaintiff received a copy of this notice. On December 13, plaintiff conferred with the Civilian Personnel Director and again asserted his belief that he was physically unable to perform the duties of Senior Warehouseman. Arrangements were then made for plaintiff to undergo a physical examination, and the Civilian Personnel Director decided to and did rescind the personnel action of which plaintiff had been advised by the notice dated December 12. All copies of the report of the action, with the exception of the one received by plaintiff, were *576 destroyed, and all entries in the records at MacDill Field were corrected accordingly. The Civilian Personnel Director intended, in making the rescission, to await the results of plaintiff’s physical examination, and then to go through the procedure of downgrading anew, giving plaintiff a further notice of thirty days before the action would become effective. Plaintiff did not report for work at any time after November 15, 1946. Plaintiff was given a medical examination on December 16, 1946, which found, in effect, that he was qualified to perform duties involving little or no physical labor. The report of the examination was submitted to the Civilian Personnel Director, but his intention as related above to formally reclassify plaintiff was never carried into effect. Findings 9-13.
On December 30, 1946, plaintiff entered a Veterans Hospital. While he was in the hospital, plaintiff’s wife reported his condition to the Civilian Personnel Director and asked that plaintiff be carried in leave status. The Director agreed to this and made arrangements to carry the request into effect.
Plaintiff was carried in the status of leave with pay until February 21,1947, the date of exhaustion of his accumulated sick and annual leave. While on leave with pay plaintiff received the pay of a Storekeeper, CAF-5. From February 1, 1947, to February 21, 1948, plaintiff was carried in the status of leave without pay. On December 3, 1947, the Civilian Personnel Director advised plaintiff that he was not authorized to grant more than a year’s leave without pay, and that plaintiff’s year would terminate on February 21, 1948. Findings 14-16. On the latter date, the records of the War Department were changed to show plaintiff’s resignation as of that date from the position of Storekeeper, CAF-5, $2,895.60 per annum.
Plaintiff’s contentions are (1) that the notice of proposed action given to him[1] did not comply with the requirements of Section 14 of the Veterans’ Preference Act of 1944, supra, and (2) that in violation of Section 14 plaintiff was “constructively discharged” from his position within the thirty *577 day period following the notice of proposed action, by being assigned during that period to duties he could not, because of his physical condition, perform. Plaintiff urges that because of these violations of Section 14, he should be given judgment for an amount representing salary for the period November 18,1946, to August 25,1948.[2]
Defendant, in defense of plaintiff’s claim, places principal reliance on the contention that the proposed action never became effective. Defendant also contends that plaintiff may not recover in any event, for the reason that during much of the period for which recovery is sought plaintiff was on leave with pay and without pay at his own request.
If it be assumed that the notices in November 1946 of proposed action did not comply with the requirements of Section 14, and if it be further assumed (contrary to the fact) that the proposed action became effective, it would nevertheless seem to us that plaintiff would not be entitled to recover in this case, for the reason that he would not have been “reduced in rank or compensation” within the meaning of Section 14 of the Veterans’ Preference Act of 1944, supra.
The situation which had occurred in October of 1946 was that the position of Storekeeper, CAF-5, which plaintiff held, had become, through no fault of plaintiff or defendant, one which no longer merited the classification it then bore. Consequently, after a position classification survey, it was decided by the proper officers of defendant to reclassify the position to a grade more commensurate with the duties and responsibilities incumbent upon the position as it had developed. There can be no question as to the right, if not the duty, of defendant’s officials to pursue this course wherever appropriate. Plaintiff was offered the position as reclassified, and refused to accept it. He was, in our opinion, entitled to no more than this.
It is unnecessary, however, under the facts and circumstances of this case to decide the question or the issue raised by *578 plaintiff of whether or not the notice of proposed action was not in compliance with the requirements of Section 14, assuming that the provisions of that section were applicable. For defendant contends, and it clearly appears from the record, that the proposed reclassification of which plaintiff was notified never became effective, and that plaintiff was never downgraded.
Two days before the effective date of the proposed action, plaintiff conferred with the Civilian Personnel Director and asserted his belief that he was physically unable to perform the duties of Senior Warehouseman. The Civilian Personnel Director thereupon determined to rescind the action of which plaintiff had been advised by notices dated November 12 and December 12, 1946, pending the outcome of the forthcoming physical examination which had been arranged for plaintiff. As the proposed reclassification was rescinded, plaintiff was never downgraded from the position of Storekeeper, CAF-5, and consequently may not recover on the ground which he asserts in his first contention.
Plaintiff’s second contention is that he was “constructively discharged” from his position on November 18,1946, by being assigned on that date to duties which he could not perform because of his physical condition. Plaintiff urges that this action, taken during the thirty day period following receipt of notice of the proposed reclassification, was a violation of Section 14 of the Veterans’ Preference Act.
Without regard to other objections which might be made, the facts do not support plaintiff’s position. In November, 1946, the position of Storekeeper, CAF-5, held by plaintiff was reclassified; it became the position of Senior Warehouseman. Plaintiff was offered the latter position but refused to accept it. The evidence does not establish that this position involved duties requiring physical labor incompatible with plaintiff’s physical condition as disclosed by the medical report of his physical examination. The record establishes, rather, that the duties of the position of Senior Warehouseman were similar to, but of less responsibility than, those of the position of Storekeeper, CAF-5. While plaintiff believed that he was assigned to duties which he was physically unable to perform, the evidence fails to bear out the correct *579 ness of this belief. All else aside, therefore, plaintiff may not recover on the basis of his second contention.
Defendant has advanced an additional argument. Plaintiff requested and was granted thirty days’ annual leave on November 19, 1946. Prior to the expiration of this leave plaintiff entered a hospital, and while in the hospital, plaintiff’s wife requested on plaintiff’s behalf that he be carried in a leave status. This was done. Plaintiff was carried in a leave with pay status until the exhaustion of his accumulated sick and annual leave, and was then placed on leave without pay, on February 21, 1947. One year later, the records of the War Department were changed to reflect plaintiff’s resignation as of February 21, 1948. Defendant contends that plaintiff may not recover in any event for the period during which he was in a leave status at his own request, or for the period subsequent to February 21, 1948, the date of plaintiff’s “resignation.” We find it unnecessary to pass upon this argument in view of the facts of this case. Cf. Garcia v. United States, 128 C. Cls. 722, 737.
For the reasons which we have indicated herein, plaintiff is not entitled to recover in this suit, and the petition is accordingly dismissed.
It is so ordered.
Madden, Judge; Whitaker, Judge; and Jones, Chief Judge, concur.
FINDINGS OF FACT
The court having considered the evidence, the report of Commissioner W. Ney Evans, and the briefs and arguments of counsel, makes findings of fact as follows:
1. Plaintiff is a citizen of the United States and a veteran of World War I with a service-connected disability, and is entitled to the benefits of the Veterans Preference Act of 1944.
2. On May 12, 1941, plaintiff commenced employment as an Assistant Storekeeper, CAF-3, War Department, at Mac-Dill Field, Tampa, Florida. He was promoted successively to grade CAF-5, Storekeeper, and on July 14, 1946, he received an increase in pay to $2,895.60 per annum.
*580 3. In October 1946, a position classification survey of the civilian positions in the base commissary at MacDill Field was made. This survey proposed reclassification of the position held by plaintiff from Storekeeper, CAF-5, to Senior Warehouseman, Grade 9. Plaintiff was informed of the proposed reclassification on or about November 1,1946; and, at the same time, an Army enlisted man was assigned to supervisory duties at the commissary where plaintiff worked.
4. On November 3, 1946, plaintiff wrote to the “Regional Director, Fifth U. S. Civil Service Commission,” Atlanta, as follows:
Due to the fact that my job here at MacDill Field as Senior Storekeeper * * ' * has been reclassified from CAF-5 to unclassified 9 a loss to me of $603.00 per year and on top of that my place has been filled by military personnel which sort of puts me in a bad way in face of all the reduction in force now going on at this field is my reason for writing you for advice and guidance.
I am a permanent employee * * *.
It is now my desire to'leave the War Dept, and seek employment within another agency preferably the Customs Service as Inspector, of .Customs * * *.
I would greatly appreciate your advice and guidance as to how I can effect a change to another agency * * *.
5. On November 12,1946, an unsigned document was presented to plaintiff and he was requested to indicate, with his signature and by appropriate marking, that he would or would not accept a reduction in grade from Storekeeper CAF-5, $2,895.60 per annum,: to Senior Warehouseman, Grade 9, $1.10 per hour (5th step), effective December 15, 1946, “in lieu of reclassification.” Plaintiff signed the document specifying that he would not accept the reduction.
At the time this document was presented to and signed by plaintiff, it was the form regularly used at MacDill Field as notice to civilian employees of proposed reduction in grade. It was the only written notice given to plaintiff more than 30 days before the specified effective date (December 15, 1946) of the proposed action, and was intended at the time to serve as the required advance notice to plaintiff as a veteran. A few weeks later the form was replaced by a revised notice on orders from the Civilian Personnel Director.
*581 It is not established by the evidence that the document presented to and signed by plaintiff failed to notify him of any essential fact relating to the proposed action.
6. Plaintiff did not report for work on November 18,1946, and was listed as absent without leave. A deduction was made accordingly from his next pay check.
A few days before this absence, the enlisted man assigned to the commissary where plaintiff worked ordered him to help unload boxcars. Plaintiff refused to do so, believing that he was unable to do such arduous physical labor.
7. On November 19, 1946, plaintiff conferred with the Assistant Personnel Officer at MacDill Field and with the man who became Civilian Personnel Director a few days later and was then on temporary assignment at MacDill Field. Plaintiff discussed with him his situation, including his understanding that the work of Senior Warehouseman would include the physical labor of unloading boxcars and his belief that his health would not permit him to do such physical labor. Following the conference plaintiff applied for and was granted 80 days’ annual leave, and was given a letter signed by the Assistant .Personnel Officer reading as follows:
Reference is made to recent notice which you received from this office which gave advance notification that the position of Storekeeper, CAF-5 at $2,895.00 p/a which you now occupy is being downgraded as a result of a recent classification survey to Sr. Warehouseman, Gr. 9, Step 5 at $1.10 p/h.
Since several recent reductions in force have cut heavily into the supervision which you are called upon to exercise, and in view of present policy to assign military personnel to many of the positions formerly occupied by civilians, the position has through no fault of yours evolved into one which no longer merits the higher classification.
Since on November 12, 1946, you signed a statement that you would not accept the reduction in grade we believe it only fair to warn you that this office has no alternative other than to make the action effective as specified on December 15, 1946, and unless a transfer or reassignment of mutual agreement can be arranged prior to that date you will automatically begin receiving pay at the reduced rate'.
*582 Since it is not your desire to accept reassignment to any position in the Supply or Commissary divisions, nor are you interested in any ungraded position, the field for reassignment is very limited.
Reference is made to the position of Safety Engineer,. P-2, for which you have requested consideration. An investigation has disclosed that the present incumbent has neither Veterans Preference or Classified Status, however, after a careful review of existing records it is the opinion of this office that you do not have the prerequisite requirements necessary to cause the displacement of this employee.
It is the policy of this office to utilize the entire period of advance notice, in an effort to find an assignment more commensurate with an employee’s present grade, however, should our efforts prove unsuccessful by the stated effective date the demotion action must take place regardless of the employee’s acceptance.
8. On December 12,1946, the Civilian Personnel Director signed a report of personnel action directed to plaintiff notifying him that, effective December 15, 1946, he would be changed from Storekeeper to the lower grade of Senior Warehouseman, a reduction from CAF-5, $2,895.60 per annum, to Grade 9, Step 5, $1.10 per hour. The notice contained the following advice:
Result of reclassification. Employee was given 30 days written notice but refused to sign Change to Lower Grade agreement.
A copy of this notice was forwarded to and received by plaintiff.
9. On December 13, 1946, plaintiff conferred with the Civilian Personnel Director and again asserted his belief that he was physically unable to perform the duties of Senior Warehouseman. Arrangements were thereupon made to obtain a physical examination for plaintiff. In view of the forthcoming physical examination the Civilian Personnel Director determined to rescind the action of which plaintiff had been advised by notice dated December 12. All of the copies of the notice of personnel action, except the one held by plaintiff, were thereupon destroyed, and all entries in the records at MacDill Field were corrected accordingly. In making this rescission the Civilian Personnel Director in *583 tended to await the result of plaintiff’s physical examination, and then to initiate the procedure of downgrading anew, with a further notice of 30 days to plaintiff before the action would become effective.
10. On December 16, 1946, plaintiff was given a physical examination, as a result of which the examining physician certified that:
[Plaintiff] has been found qualified to do only non-laborious type of work.
This man is not qualified to do duties as a Senior Warehouseman where physical labor is involved.
This medical report was submitted to the Civilian Personnel Director.
11. Plaintiff never reported for work after November 15, 1946. On December 30,1946, he entered a Veterans Hospital where he remained until January 3,1947.
12. While plaintiff was in the hospital, his wife reported his condition to the Civilian Personnel Director and asked that plaintiff be carried in leave status. The Civilian Personnel Director agreed and made arrangements accordingly.
Plaintiff was carried in the status of leave with pay until the exhaustion of his accumulated annual and sick leave on February 21, 1947. During this time plaintiff received the pay of his position as Storekeeper. From February 21,1947, to February 21, 1948, plaintiff was carried in the status of leave without pay. On the latter date the records of the War Department were changed to show plaintiff’s resignation as of that date from the position of Storekeeper, CAF-5, $2,895.60 per annum.
13. (a) In November 1946, the position of Storekeeper, CAF-5, which plaintiff held, was reclassified and became the position of Senior Warehouseman.
(b) Plaintiff was offered the position of Senior Warehouseman, but refused to accept it.
(c) It is not established by the evidence that the position of Senior Warehouseman involved duties requiring physical labor incompatible with the recommendation of the medical report of plaintiff’s physical examination.[1]
*584 (d) Plaintiff was never downgraded from the position of Storekeeper, CAF-5.
(e) If plaintiff had reported for work, during or after the leave which began on November 19, 1946, it would have been the duty of the Civilian Personnel Director to reassign plaintiff to the position of Senior Warehouseman (after the requisite 30 days’ notice), unless the Civilian Personnel Director found that the duties of that position were incompatible with the recommendation of the medical report, in which event it would have been the duty of the Civilian Personnel Director to assign plaintiff to some other position, if available, the duties of which were in keeping with the medical recommendation. If no such position could be found, plaintiff would have been separated by reduction in force. It is not established by the evidence that plaintiff’s situation ever was such as to entitle him to replace another employee with lower retention rights as in a reduction in force.[2]
14. On May 1,1947, the Civilian Personnel Director wrote to the Regional Director, Fifth U. S. Civil Service Region, as follows:
At the request of Mr. James P. McNulty, the following information is submitted:
a. Mr. McNulty, Storekeeper, CAF-5, at $2,895.60 per annum, retention subgroup A-Í, is presently being carried on the rolls of this station in a leave-without-pay status.
b. Due to illness, Mr. McNulty was allowed to consume all accrued sick and annual leave which expired after 7 hours on February 21,1947.
c. Position formerly occupied by Mr. McNulty has been reclassified to a lower grade and at the present time no position exists at this station, in a grade commensurate with his present grade, for which employee is qualified and willing to accept.
d. No objection is interposed to Mr. McNulty’s transfer to any Federal agency.
15. On December 3, 1947, the Civilian Personnel Director wrote plaintiff as follows:
*585 In making a periodic review of tbe files of those employees who are being carried on the roll of this Base in an inactive status, my attention was called to the fact that the period of leave without pay, which you were granted, will expire on February 21, 1948. This date allows one calendar year from February 21, 1947, the date on which your accumulated leave expired.
■ While it is not the desire of this office to deprive you of any portion of the leave as originally approved, it is mandatory that the period of LWOP does not exceed the maximum (one year) which we are authorized to grant.
Since your health was the determining factor in granting this leave, we assume that your declination of offers of reassignments may also have been influenced by the same condition; therefore, we feel that it would be no more than fair to consider a reassignment based on current conditions.
If you desire such consideration, it is requested that you contact this office, prior to the expiration of your leave.
16. On May 6,1948, the Chief, Examining and Placement Division, Civil Service Commission, Fifth Region, wrote plaintiff as follows:
Your letters of March 15 and March 17,1948, together with your report and files which you submitted to the U. S. Civil Service Commission, Washington, D. C., in support of your appeal for reconsideration of your rights as provided for under the Veterans Preference Act of 1944, have been forwarded to this office for appropriate action.
A complete review has been made of your file, and it has been determined that you were not affected by reduction in force, but rather by a reclassification of your position, and that on November 12, 1946, you signed a statement that you would not accept a reduction in grade. In view of this fact, there is no basis for your appeal under Section 12 or Section 14 of the Veterans Preference Act of 1944. Inasmuch as you were not affected by reduction in force, your application may not be considered under the Displaced Career Employee Program.
Examinations for probational appointment which have been announced since March 7, 1946, may be reopened. In addition, examinations for positions to which probational appointments have been made within the past three years may be reopened. Enclosed is a *586 list of positions to which probational appointments have been made within the past three years. For information concerning positions coming under the jurisdiction of the Establishment Boards, it will be necessary that you contact the appropriate board. For your convenience, there is enclosed a list of Establishment Boards in the State of Florida. Since your file shows that you are entitled to the benefits of ten-point disability preference, it is suggested that you file applications to reopen any examinations in which you are interested and for which you feel that you meet the requirements.
Since you have competitive status, you are also entitled to reinstatement in Federal service. For your information, there is enclosed a copy of O. F. 254 concerning reinstatement and transfer.
17. On May 11, 1948, plaintiff wrote to the Chairman, Civil Service Board of Appeals and Review, Washington, as follows:
I wish to appeal" through your Board the decision rendered in my case on May 6, 1948 by the 5th Civil Service Regional Office * * * in which my appeal * * * for adjudication under the Veterans Preference Act of 1944 was denied. * * *
18. On August 25, 1948, plaintiff was employed by the Office of Quartermaster General, Washington, at grade CAF-5, $3,225.60 per annum.
19. On September 1,1948, the Acting Chairman, Board of Appeals and Review, United States Civil Service Commission, Washington, wrote plaintiff as follows:
Reference is made to your appearance before the Board of Appeals and Review on Thursday, August 5,1948, in connection with your separation from the service of Headquarters Army Air Base, MacDill Field, Florida, effective February 21, 1947. Subsequent to that date you were carried in leave without pay status.
The Board has given most careful consideration to your representations in the matter but has been unable to find that there is any personal bias or discrimination in connection with your downward reallocation in your position, or that the action of the Agency was unauthorized. It appears from your statements that the supervisory duties formerly exercised by you in ,the position of Storekeeper were assigned to a member of the Enlisted Persomiel of the Army, and your position was reallo *587 cated as Senior Warehouseman. You were given thirty days’ notice of the reallocation and carried in duty status during this notice period. It further appears that for physical reasons you refused to accept the Senior Warehouseman position and as a result, that your services were terminated.
The record does not disclose that there is any reduction in force involved in your downward reallocation and consequently the regulations governing reduction in force action would not be applicable. It may be, as you allege, that there are other positions which you are qualified to fill at MacDill Field held by persons with less retention credits but since no reduction in force was involved, the Commission cannot direct the Agency to displace another employee and assign you to such employee’s position.
It is regretted that the facts in your case preclude further action on your complaint.
20. Plaintiff last reported for work in his position at MacDill Field on November 15,1946. He was not employed in another job until August 25,1948.
CONCLUSION OF LAW
Upon the foregoing findings of fact which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is not entitled to recover, and the petition is therefore dismissed.

 This was the unsigned document, heretofore referred to, presented to plaintiff on November 12, 1946.

 Plaintiff says that the constructive discharge occurred on November 18, 1946, when he was ordered by the enlisted man to help unload boxcars. The proof does not disclose the exact date of this order, but it was some time in the middle of November. On August 25, 1948, plaintiff secured other employment as a CAF-5.

 The position of Senior Warehouseman involved supervisory duties similar to those of Storekeeper, but not the same degree of responsibility. Workmen were assigned from time to time to do the heavy manual labor.

 Plaintiff’s efforts from the outset were directed toward developing a situation wherein his veteran’s status would entitle him either to replace another employee at MacDill Eield or to obtain a transfer, preferably the latter.